1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRYSTI CORKILL, an individual,<br><br>                                    Plaintiff,<br><br>         vs.<br><br>PREFERRED EMPLOYERS GROUP, LLC,<br>a limited liability company; PREFERRED<br>EMPLOYERS INSURANCE COMPANY, a<br>corporation; and DOES 1 through 25,<br>inclusive,<br><br>                                    Defendants. | CASE NO. 11cv505 - IEG (WMC)<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT**<br><br>[Doc. No. 17] |

Presently before the Court is Defendant Preferred Employers Group, LLC ("PEG")'s

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. No. 17.] For

the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** PEG's motion

for summary judgment.

## BACKGROUND

**I.     Facts**

This action arises out the termination of Plaintiff Chrysti Corkill ("Plaintiff")'s employment

by Defendant PEG.  The following facts are taken from the allegations in the complaint.  During

Plaintiff's employment with PEG, Plaintiff suffered from a mental disability requiring her to take

medical leave. [Doc. No. 1-1, <u>Compl.</u> ¶ 17.] Specifically, on February 17, 2010, Plaintiff's physician

placed her on medical leave for anxiety and depression. [Id.] Plaintiff provided Kim Urban, PEG's Benefits Analyst, with a note from her physician, and Plaintiff completed an application for family/medical leave. [Id.] Shortly thereafter, Plaintiff received a notice from PEG approving her leave. [Id.] On April 7, 2010, Plaintiff had a follow-up appointment with her physician, and her physician informed her that she was unable to return to work full-time and extended Plaintiff's medical leave. [Id. ¶ 18.]

Around the beginning of April 2010, various PEG employees began questioning Plaintiff about her remaining medical leave availability. [Id. ¶ 19.] On April 9, 2010, Plaintiff received a message from Daryl Tilghman, PEG's Assistant Vice President, Human Resources. [Id. ¶ 20.] This message stated that PEG was unable to extend Plaintiff's medical leave and that she needed to return to work by April 12, 2010. [Id. ¶ 21.] Plaintiff spoke with Mr. Tilghman and informed him that she would only be able to return to work if she was allowed to work part-time to accommodate her mental disability. [Id.] Mr. Tilghman summarily stated that part-time work was not available. [Id.] On April 12, 2010, Plaintiff did not return to work, and PEG terminated her employment. [Id. ¶ 22.]

Plaintiff alleges that she was terminated even though she had not used her entire 12 weeks of family/medical leave provided to her under California law. [Id. ¶ 21.] Plaintiff also alleges that PEG has allowed other employees to work on a part-time basis. [Id.]

II.     **Administrative History**

On June 30, 2010, Plaintiff filed an administrative charge[1] with the California Department of Fair Employment and Housing ("DFEH") alleging that she was subjected to employment discrimination. [Doc. No. 18-1, Ex. C.] The charge named Defendant Preferred Employers Insurance Company ("PEIC") in the caption of the charge and named Daryl Tilghman in the body of the charge. [Id.]

On July 2, 2010, the DFEH sent Mr. Tilghman a notice informing him of Plaintiff's June 30, 2010 charge. [Doc. No. 22-15, Ex. 15.] On August 6, 2010, the DFEH received a completed "Notification of Respondent's Address" form that was signed by Mr. Tilghman and named "Preferred

---

[1] The parties and the case law also refer to "administrative charges" as "administrative complaints." The Court will refer to Plaintiff's administrative pleadings as "charges" to distinguish them from Plaintiff's civil complaint.

Employers Group, LLC" as respondent's legal name. [Doc. No. 22-16, Ex. 16.] On August 24, 2010, PEG through counsel sent a letter to the DFEH responding to the allegations in Plaintiff's June 30, 2010 charge. [Id.] The letter stated that PEG is the proper respondent and that Plaintiff improperly named PEIC as her employer. [Id.] On January 7, 2011, the DFEH sent Plaintiff a notice of case closure and notice of right-to-sue. [Doc. No. 18-1, Ex. D.]

On January 27, 2011, Plaintiff's counsel mailed to the DFEH an amended charge that added additional allegations. [Doc. No. 22-26, Ex. 26; Doc. No. 22-27, Ex. 27, Declaration of Julie A. Cosner ("Cosner Decl.") ¶ 2.][2] The January 27, 2011 charge does not show that it was ever filed by the DFEH. [Doc. No. 22-26, Ex. 26.] On May 19, 2011, Plaintiff filed an amended charge with the DFEH. [Doc. No. 18-1, Ex. E.] This amended charge contained the same allegations as the original June 30, 2010 charge, but it named Defendant PEG in the caption of the charge. [Id.] An additional notice of case closure was sent to Plaintiff on June 22, 2011. [Id. Ex. F.]

**III.   Procedural History**

On January 31, 2011, Plaintiff filed a civil complaint against Defendants PEG, PEIC, and W.R. Berkeley Corporation ("W.R. Berkley") alleging causes of action for (1) wrongful termination in violation of California Government Code § 12945.2; (2) wrongful termination in violation of California Government Code § 12940(a); (3) discrimination on the basis of mental disability in violation of California Government Code § 12940(a); (4) failure to accommodate in violation of California Government Code § 12940(m); (5) failure to engage in the interactive process in violation of California Government Code § 12940(n); and (6) intentional infliction of emotional distress. [Doc. No. 1-1, Compl.]

On March 14, 2011, Plaintiff dismissed Defendant PEIC. [Doc. No. 37-3, Declaration of Elizabeth Koumas ("Koumas Decl.") Ex. A.] Shortly thereafter, Defendants PEG and W.R. Berkeley removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. [Doc. No. 1, Notice of Removal.] On June 8, 2011, the Court granted the

---

[2] PEG objects to and moves to strike exhibits 15, 16, 26, and 27 to Plaintiff's notice of lodgment in support of her opposition to PEG's motion for summary judgment, which are cited in the Court's description of the administrative proceedings. [Doc. No. 30.] The Court addresses these objections below. See infra discussion section II.

1    parties' joint motion and dismissed Defendant W.R. Berkeley leaving PEG as the sole remaining

2    Defendant. [Doc. No. 11.] By the present motion, PEG seeks summary adjudication of all six of

3    Plaintiff's claims. [Doc. No. 17-1, Def.'s Mot.]

**DISCUSSION**

5    **I.    Subject Matter Jurisdiction**

6         Upon reviewing the materials in this case, the Court became concerned about whether it

7    had subject matter jurisdiction over this action. Therefore, on October 27, 2011, the Court issued

8    an order to PEG to show cause why the action should not be remanded. [Doc. No. 33.] On

9    November 3, 2011, PEG filed its response to the order to show cause showing that this Court has

10   diversity jurisdiction over the action. [Doc. No. 37.]

11        Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only

12   over matters authorized by the Constitution and Congress. See Kokkonen v. Guardian Life Ins.

13   Co., 511 U.S. 375, 377 (1994). A defendant may remove a civil action from state court to federal

14   court if original jurisdiction would have existed at the time the complaint was filed. 28 U.S.C. §

15   1441(a). "Removal statutes are strictly construed against removal." Luther v. Countrywide Home

16   Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008). There is a "strong presumption"

17   against removal jurisdiction, and the party seeking removal always has the burden of establishing

18   that removal is proper. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). If there is any

19   doubt as to the propriety of removal, federal jurisdiction must be rejected. Id. at 567. If at any

20   time before the entry of final judgment it appears that the Court lacks subject matter jurisdiction

21   over a case removed from state court, it must remand the action to state court. See 28 U.S.C. §

22   1447(c); Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 87 (1991).

23        For a federal court to exercise diversity jurisdiction, there must be "complete" diversity

24   between the parties and the amount in controversy requirement must be met. See Strawbridge v.

25   Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806); 28 U.S.C. § 1332(a). "Complete diversity" means that

26   "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp.

27   Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008). For the purposes of diversity jurisdiction,

28   a corporation is a citizen of any state where it is incorporated and of the state where it has its

principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  "[A]n LLC is a citizen of every state of which its owners/members are citizens."  Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).

The notice of removal and the complaint both state that Plaintiff is a citizen of California.  [Compl. ¶ 1; Notice of Removal ¶ 4.]  Accordingly, for the Court to have diversity jurisdiction over this action, none of the Defendants can be a citizen of California.  See Digimarc, 549 F.3d at 1234.

In its response to the order to show cause, PEG submitted a declaration explaining its citizenship for diversity purposes.  [See Doc. No. 37-1, Declaration of Josephine A. Raimondi ("Raimondi Decl.").]  PEG is wholly owned by its sole member, Berkeley Alternative Markets Insurance Services, LLC.  [Id. ¶ 3.]  Berkeley Alternative Markets Insurance Services, LLC is wholly owned by its sole member Midwest Employers Casualty Company.  [Id. ¶ 4.]  Midwest Employers Casualty Company is incorporated in Delaware and its principal place of business is in Missouri.  [Id. ¶ 5.]  Therefore, Midwest Employers Casualty Company's citizenship for diversity purposes is Delaware and Missouri, see 28 U.S.C. § 1332(c), and thereby, PEG's citizenship is also Delaware and Missouri.  See Johnson, 437 F.3d at 899.  Because PEG is a citizen of Missouri and Delaware and Plaintiff is a citizen of California, PEG has met its burden of establishing that there is complete diversity of citizenship between the parties.  See Digimarc, 549 F.3d at 1234.  Accordingly, the Court concludes that it has subject matter jurisdiction over this matter.

**II.**     **PEG's objections to Plaintiff's Exhibits**

Plaintiff has submitted various exhibits in support of her opposition to PEG's motion for summary judgment.  [See Doc. No. 22.]  In deciding PEG's motion for summary judgment, the Court considers exhibit 10, a letter dated April 12, 2010 from Daryl Tilghman to Plaintiff on company letterhead with the caption "Re: Notice of Termination"; exhibit 15, a notice of the filing of Plaintiff's June 30, 2010 charge dated July 2, 2010 sent from the DFEH to Daryl Tilghman; exhibit 16, a letter dated August 5, 2010 from PEG's counsel to the DFEH regarding Plaintiff's June 30, 2010 charge, a notification of Respondent's address signed by Daryl Tilghman on August

5, 2010 and received by the DFEH on August 6, 2010, and a letter dated August 24, 2010 from PEG's counsel to the DFEH regarding Plaintiff's June 30, 2010 charge that was received by the DFEH on August 25, 2010; exhibit 26, a letter dated January 27, 2011 from Plaintiff's counsel to the DFEH attaching an amended charge signed by Plaintiff on January 25, 2011; and exhibit 27, the declaration of Julie A. Cosner.  [Doc. Nos. 22-10, 22-15, 22-16, 22-26, 22-27.]  PEG objects to and moves to strike these exhibits.  [Doc. No. 30 at 7, 10-11, 14-16.]

First, PEG objects to all of these exhibits as irrelevant under Federal Rules of Evidence 401 and 402.  [Id.]  PEG is incorrect as these exhibits are clearly relevant to Plaintiff's claims and to the issue of whether Plaintiff exhausted her administrative remedies.  Therefore, the Court **OVERRULES** PEG's objection for lack of relevance.

Second, PEG objects to all of these exhibits on the basis that Plaintiff may not offer evidence that contradicts an admitted fact, citing Valerio v. Andrew Youngquist Construction, 103 Cal. App. 4th 1264, 1271 (2002).  [Id.]  However, PEG does not state what admitted facts Plaintiff is attempting to contradict.  In its reply, PEG mentions that Plaintiff may not dispute the fact that PEG was not named in a DFEH charge until May 19, 2011, [Doc. No. 29, Def.'s Reply at 6-7], but Plaintiff is not submitting these exhibits to dispute that fact.  Plaintiff is submitting these exhibits to dispute the legal consequences of that fact, i.e., whether despite the fact that PEG was not named in a charge until May 19, 2011, she has still properly exhausted her administrative remedies.  Therefore, the Court **OVERRULES** this objection.

Third, PEG objects to exhibits 16, 26 and 27 as inadmissible under Federal Rule of Evidence 602.  [Doc. No. 30 at 11, 14-16.]  Rule 602 provides: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.  FED. R. EVID. 602.  Exhibits 16 and 26 are documents, and therefore, Rule 602 is inapplicable as it applies to witness testimony not documents.  See id.  Exhibit 27 is witness testimony because it is a declaration.  However, the statements in the declaration show that they are based on personal knowledge as the declarant states that she is the person who prepared the cover letter for the amended charge and mailed the amended charge with the cover letter to the

1  DFEH.  [See Doc. No. 22-27, Cosner Decl. ¶ 2.]  Therefore, the Court **OVERRULES** PEG's

2  objection for failure to comply with Rule 602.

3       Finally, PEG objects to all of these exhibits for lack of foundation or authentication.  [Doc.

4  No. 30 at 7, 10-11, 14-16.]  Federal Rule of Evidence 901(a) requires "authentication or

5  identification as a condition precedent to admissibility."  Thus, before evidence may be admitted, a

6  foundation must be laid "by evidence sufficient to support a finding that the matter in question is

7  what its proponent claims."  Fed. R. Evid. 901(a).  "[U]nauthenticated documents cannot be

8  considered in a motion for summary judgment."  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir.

9  2002).

10      Generally, on a motion for summary judgment, a document is authenticated through

11 personal knowledge by attaching it to an affidavit, where the affiant is a competent witness who

12 wrote the document, signed it, used it, or saw others do so.  See Las Vegas Sands, LLC v. Nehme,

13 632 F.3d 526, 533 (9th Cir. 2011) (citing FED. R. EVID. 901(b)(1)).  However, documents can also

14 be authenticated under Federal Rule of Evidence 901(b)(4) "'by review of their contents if they

15 appear to be sufficiently genuine.'"  Id. (quoting FED. R. EVID. 901(b)(4)).  Rule 901(b)(4)

16 provides that authentication can be satisfied by the object's "[a]ppearance, contents, substance,

17 internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."

18 Fed. R. Evid. 901(b)(4).  For example, a letter can be authenticated by reviewing its date, who it is

19 from, who it is sent to, and what the letter is regarding.  See Las Vegas Sands, 632 F.3d at 533-34.

20      Exhibit 27 is properly authenticated as the declaration states that the declarant, Ms. Cosner,

21 has personal knowledge of the statements set forth in the declaration.  [See Doc. No. 22-27,

22 Cosner Decl. ¶ 1.]  See FED. R. EVID. 901(b)(1).  In addition, the documents in exhibit 26 are

23 authenticated because they are referenced in Ms. Cosner's declaration, and Ms. Cosner states in

24 the declaration that she prepared the cover letter and mailed the cover letter along with the

25 amended charge to the DFEH.  [See Doc. No. 22-27, Cosner Decl. ¶ 2.]  See FED. R. EVID.

26 901(b)(1); Las Vegas Sands, 632 F.3d at 533.

27      Exhibits 10, 15, and 16 have not been attached to a declaration or affidavit.  However, a

28 review of the contents of these documents show that they appear to be what Plaintiff purports them

to be.  These documents are all correspondence showing the date of the correspondence, who sent

the correspondence, to whom the correspondence was sent, and the subject matter of the

documents.  [See Doc. Nos. 22-10, 22-15, 22-16.]  Taken in conjunction with the circumstances,

these exhibits appear to be sufficiently genuine.  See Brown v. Kyle, 2011 U.S. Dist. LEXIS

85343, at *8-9 (E.D. Cal. Aug. 3, 2011) (finding prison records authenticated under Rule 901(b)(4)

after reviewing their appearance and content); Las Vegas Sands, LLC v. Nehme, 2011 U.S. Dist.

LEXIS 80531, at *6-10 (D. Nev. Jul. 21, 2011) (finding letter authenticated under Rule 901(b)(4)

after reviewing its appearance and content).  Moreover, it is not clear that exhibits 15 and 16 need

to be authenticated because the Court may take judicial notice of these two exhibits since they are

part of the DFEH administrative record.  See Mack v. South Bay Beer Distribs., 798 F.2d 1279,

1282 (9th Cir. 1986).  In addition, if PEG genuinely disputed the authenticity of these documents,

it should have "made specific objections as to those [documents]" rather than just a "bare

objection . . . for lack of proper authentication."  Brown, 2011 U.S. Dist. LEXIS 85343, at *9.

Therefore, the Court **OVERRULES** PEG's objection for lack of foundation and authentication.

   In sum, the Court **OVERRULES** all of PEG's objections.  Accordingly, the Court

**DENIES** PEG's motion to strike exhibits 10, 15, 16, 26 and 27 of Plaintiff's notice of lodgement

in support of her opposition to PEG's motion for summary judgment.

**III.**   **PEG's Motion for Summary Judgment**

   **A.**   **Legal Standard for a Motion for Summary Judgment**

   Summary judgment is proper where the pleadings and materials demonstrate "there is no

genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A material issue of fact

is a question a trier of fact must answer to determine the rights of the parties under the applicable

substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

   The moving party bears "the initial responsibility of informing the district court of the basis

for its motion."  Celotex, 477 U.S. at 323.  To satisfy this burden, the movant must demonstrate

that no genuine issue of material fact exists for trial.  Id. at 322.  Where the moving party does not

have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).  To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact.  Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000).  The non-moving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party.  Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment.  Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Moreover, the court is not required "'to scour the record in search of a genuine issue of triable fact,'" Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

### B.    Failure to Exhaust Administrative Remedies

#### 1.    Failure to Exhaust Administrative Remedies Against PEG

PEG argues that it is entitled to summary judgment on Plaintiff's first five causes of action because Plaintiff failed to timely exhaust her administrative remedies against it.  [Def.'s Mot. at 3-5.] PEG's argument is two part.  First, PEG argues that Plaintiff never filed a DFEH charge naming PEG as a defendant prior to bringing the present lawsuit.  [Id. at 3-4.] Second, PEG argues that Plaintiff did not name it as a defendant in a charge until she filed an amended charge on May 19, 2011 and that amended charge is barred by the applicable statute of limitations.  [Id. at

2-4.] In response, Plaintiff argues that she did not have to specifically name PEG in her original DFEH charge because PEG had notice of the charge and participated in the DFEH administrative proceedings. [Doc. No. 20-1, Pl.'s Opp'n at 7-9.]

Plaintiff's first five causes of action are brought pursuant to the California Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12900 et seq. [Compl. ¶¶ 28-71.] "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 492 (1996) (citing CAL. GOV'T CODE §§ 12960, 12965(b)).

California Government Code § 12960 delineates the procedures by which aggrieved employees are to state their DFEH charges. Saavedra v. Orange County Consol. Transp. Serv. Agency, 11 Cal. App. 4th 824, 826 (1992). It provides in part:

> Any person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint in writing which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the department.

CAL. GOV'T CODE § 12960(b) (emphasis added). Based on this language, California courts have held that "section 12960 clearly mandates that aggrieved persons set forth in their DFEH complaint the names of persons alleged to have committed the unlawful discrimination." Cole v. Antelope Valley Union High Sch. Dist., 47 Cal. App. 4th 1505, 1515 (1996) (emphasis in original). "In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge." Id.

Section 12960 also provides the applicable statute of limitations for a plaintiff to bring a DFEH charge under the FEHA. See Romano, 14 Cal. 4th at 492. It provides that no DFEH charge for violations of the FEHA may be filed "after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." CAL. GOV'T CODE § 12960(d); see Romano, 14 Cal. 4th at 492.

Plaintiff filed her first DFEH charge on June 30, 2010, and named Defendant Preferred

Employers Insurance Company ("PEIC") in the caption of the charge, named Daryl Tilghman in the body of the charge, and did not specifically name PEG in either the caption or body of the charge.  [Doc. No. 18-1, Ex. C.]  PEG was not named in the caption or body of a DFEH charge until Plaintiff filed her amended charge on May 19, 2011.  [Id. Ex. E.]  Both the June 30, 2010 charge and the May 19, 2011 amended charge allege that the unlawful conduct occurred on April 9 and 12, 2010.  [Id. Exs. C, E.]  Plaintiff filed the present action in state court on January 31, 2011.  [Compl.]  Based on these facts, PEG argues that Plaintiff did not timely exhaust her administrative remedies against it because PEG was not named in a DFEH charge as required by section 12960(b) until May 19, 2011, and that charge is time barred under section 12960(d) because it was filed more than a year after the alleged unlawful conduct occurred, April 9 and 12, 2010.  [Def.'s Mot. at 3-5.]

In response, Plaintiff argues that she properly exhausted her administrative remedies against PEG because PEG had notice of the June 30, 2010 charge and participated in the agency's investigation and conciliation efforts.  [Pl.'s Opp'n at 7-9.]  In making this argument, Plaintiff relies on Sosa v. Hiroaka, 920 F.2d 1451 (9th Cir. 1990).  [Pl.'s Opp'n at 7.]  In Sosa, the Ninth Circuit stated that the administrative exhaustion requirement is satisfied against an unnamed party "if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings."  920 F.2d at 1459.

PEG argues that Sosa is not persuasive authority and should not be applied to the present case.[3]  First, PEG points out that Sosa is a case interpreting the exhaustion requirements of Title VII discrimination claims under federal law, and Plaintiff's claims are under the California statutory scheme FEHA.  [Def.'s Reply at 3.]  However, because of the similarity between state and federal employment discrimination laws, California courts have relied upon federal authority interpreting Title VII in determining the meaning of analogous provisions of the FEHA.  See Guz

---

[3] PEG also argues that Sosa is distinguishable because in Sosa the additional defendants were named in the body of the charge.  However, PEG appears to be incorrect.  In Sosa, the court stated that the charge only alleged that "the District," the named respondent in the charge, acted "'through its Administrators.'"  920 F.2d at 1458.  If the word "Administrators" was sufficient to name the additional defendants in Sosa, then the word "employer" in Plaintiff's June 30, 2010 charge would also be sufficient to name PEG.  Therefore, the Court rejects PEG's argument that Sosa is distinguishable on this basis.

v. Bechtel National, Inc., 24 Cal. 4th 317, 354 (2000); Romano, 14 Cal. 4th at 498.  PEG argues

that while California courts may rely on federal authority in interpreting the substantive provisions

of FEHA, they have not relied on federal authority in interpreting FEHA's administrative

exhaustion requirement.  PEG is incorrect.  Not only do California courts rely on Title VII federal

precedent in interpreting FEHA's administrative exhaustion requirement, but the California Court

of Appeal relied on federal precedent in interpreting section 12960(b) to require that defendants be

named in the DFEH charge.  See Valdez v. City of Los Angeles, 231 Cal. App. 3d 1043, 1061

(1991) (relying on precedent from the Fourth Circuit and the Western District of Louisiana); see

also e.g., Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243, 266-67 (2009) (relying on Title VII

federal precedent in interpreting FEHA's administrative exhaustion requirement); Holland v.

Union Pacific Railroad Co., 154 Cal. App. 4th 940, 946 & n.6 (2007) (same).

    PEG also argues Sosa is not persuasive authority because California courts do not apply

equitable exceptions to FEHA's exhaustion requirement since the requirement is jurisdictional, not

procedural unlike Title VII's administrative exhaustion requirement.  [Def.'s Reply at 3 (citing

Okoli v. Lockheed Technical Operations Co., 36 Cal. App. 4th 1607, 1613 (1995); Miller v.

United Airlines, Inc., 174 Cal. App. 3d 878, 890 (1985).]  PEG is incorrect on this point as well.

"Although California courts describe exhaustion as a jurisdictional prerequisite to suit under

FEHA, this label does not implicate the trial court's fundamental subject matter jurisdiction."

Rodriguez v. Airborne Express, 265 F.3d 890, 900 (9th Cir. 2001); accord. Holland, 154 Cal. App.

4th at 946.  Therefore, the FEHA administrative exhaustion requirement like the Title VII

requirement is subject to equitable exceptions, such as waiver, estoppel, and tolling.  See Holland,

154 Cal. App. 4th at 946; Rodriguez, 265 F.3d at 900; see also, e.g., Keiffer v. Bechtel Corp., 65

Cal. App. 4th 893, 896-900 (1998) (applying the equitable doctrine of waiver to FEHA's

administrative exhaustion requirement).

    Finally, PEG argues that the Sosa exception should not be applied to FEHA cases because

California courts have clearly interpreted the language in section 12960(b) to require that a

plaintiff must name the defendant either in the caption or the body of the DFEH charge.  [Def.'s

Reply at 3-4.]  PEG argues that this is a bright-line rule that does not allow for any exceptions.  In

1   support of this contention, PEG argues that in fashioning this rule the California Court of Appeal

2   in <u>Valdez v. City of Los Angeles</u> recognized the general policy of liberally construing allegations

3   in FEHA charges but did not apply this policy to the requirement of naming defendants in the

4   charge.  <u>See</u> 231 Cal. App. 3d at 1060-61.  However, in fashioning this rule the <u>Valdez</u> court went

5   on to note that it is based on the policy that "[f]or a claimant to withhold naming of known or

6   reasonably obtainable defendants at the administrative complaint level is neither fair under

7   [FEHA] in its purpose of advancing speedy resolutions of claims nor fair to known, but unnamed

8   individuals, who at a later date are called upon to 'personally' account in a civil lawsuit without

9   having been afforded a right to participate at the administrative level."  <u>Id.</u> at 1061; <u>see also</u> <u>Cole</u>,

10  47 Cal. App. 4th at 1513-15 (explaining that the purpose of this requirement is to ensure that

11  potential defendants are brought within the scope of the administrative proceedings conducted by

12  the DFEH).  Because <u>Sosa</u> creates an exception only where the unnamed party has both notice and

13  has participated in the administrative proceedings, the exception is consistent with this policy and

14  is fair to the unnamed defendant.  In addition, in establishing the requirement that defendants must

15  be named in the charge, the court in <u>Valdez</u> stated that it was adopting the requirement as

16  expressed by the Fourth Circuit and a district court in the Fifth Circuit.  <u>See</u> <u>Valdez</u>, 231 Cal. App.

17  3d at 1061 (citing <u>Mickel v. S.C. State Emp't Serv.</u>, 377 F.2d 239, 242 (4th Cir. 1967); <u>White v. N.</u>

18  <u>La. Corp.</u> 468 F.Supp. 1347, 1349 (W.D. La. 1979)).  Both the Fourth Circuit and the Fifth Circuit

19  have recognized that the requirement of naming a defendant in the administrative charge is not an

20  absolute requirement and have applied the exception from <u>Sosa</u> where a defendant had notice of

21  the charge and participated in the administrative proceedings.  <u>See, e.g.</u>, <u>Alvarado v. Bd. of</u>

22  <u>Trustees</u>, 848 F.2d 457, 460 (4th Cir. 1988); <u>Marks v. Prattco, Inc.</u>, 607 F.2d 1153, 1156 (5th Cir.

23  1979); <u>Johnson v. Wal-Mart Stores East, L.P.</u>, 2011 U.S. Dist. LEXIS 60354, at *8 (W.D.N.C.

24  Jun. 6, 2011).  Accordingly, the exception from <u>Sosa</u> should be applied to FEHA's administrative

25  exhaustion requirement, specifically California Government Code § 12960(b).

26          On July 2, 2010, the DFEH sent Daryl Tilghman, notice of Plaintiff's June 30, 2010 DFEH

27  charge.  [Doc. No. 22-15, Ex. 15.]  On August 6, 2010, the DFEH received a notification of

28  respondent's address signed by Mr. Tilghman that listed PEG as respondent's legal name.  [Doc.

No. 22-16, Ex. 16.]  On August 24, 2010, PEG's counsel sent the DFEH an eight-page letter responding to the allegations in Plaintiff's June 30, 2010 DFEH charge.  [Id.]  The response states that PEG is the proper respondent in Plaintiff's matter and that Preferred Employer Insurance Company was erroneously named in the complaint.  [Id.]  These documents clearly show that PEG had notice of the June 30, 2010 DFEH charge and participated in the administrative proceedings related to that charge.[4]  Therefore, Plaintiff properly exhausted her claims against PEG even though PEG was not specifically named in the June 30, 2010 DFEH charge.[5]  See Sosa, 920 F.2d at 1459.  Furthermore, because the June 30, 2010 charge was filed only a few months after the allegedly unlawful activity occurred, April 9 and 12, 2010, the June 30, 2010 charge was filed well within the one year statute of limitations under section 12960(d).  Accordingly, the Court **DENIES** PEG's motion for summary judgment of Plaintiff's first five causes of action on the basis of failure to timely exhaust her administrative remedies against PEG.

### 2.    Failure to Exhaust Administrative Remedies As To All Claims

PEG argues that it is entitled to summary judgment on Plaintiff's first and fifth causes of action–denial of family/medical leave and failure to engage in the interactive process–because Plaintiff did not exhaust her administrative remedies with respect to these specific FEHA claims. [Def.'s Mot. at 5-8.]  Specifically, PEG argues that Plaintiff's June 30, 2010 DFEH charge did not contain allegations reasonably related to those two causes of action.  [Id.]

As previously stated, prior to filing a civil action alleging FEHA violations, a plaintiff must exhaust her administrative remedies by filing a DFEH charge.  Romano, 14 Cal. 4th at 492.  "To exhaust his or her administrative remedies as to a particular act made unlawful by the [FEHA], the claimant must specify that act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts."  Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th

---

[4] The Court notes that at the hearing on this motion, PEG conceded that it had notice of Plaintiff's June 30, 2010 DFEH charge.

[5] In addition, a finding that Plaintiff properly exhausted her administrative remedies against PEG is particularly compelling in this case because PEG had represented to Plaintiff that PEIC not PEG was her employer and that PEIC was responsible for terminating her employment. [See Doc. No. 22-10, Ex. 10 (April 12, 2010 letter from Mr. Tilghman to Plaintiff on PEIC letterhead stating: "Therefore, effective today, April 12, 2010, we must terminate your employment with Preferred Employers Insurance Company.").]

1718, 1724 (1994).  Therefore, the judicial complaint may encompass only discrimination claims that are "like and reasonably related to" the allegations of the DFEH charge.  Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243, 266 (2009) (quoting HON. MING W. CHIN ET AL., CAL. PRACTICE GUIDE: EMPLOYMENT LITIGATION ¶ 16:195 (The Rutter Group 2008)).  This means that the administrative exhaustion requirement is satisfied if the allegations of the civil action are within the scope of the DFEH charge, any DFEH investigation actually completed, or any investigation that might reasonably have been expected to grow out of the charge.  Id.  In determining whether a particular claim has been exhausted, "what is submitted to the DFEH must . . . be construed liberally in favor of plaintiff." Id. at 268; see also id. at 266-67 ("Administrative charges are to be construed liberally because they are often drafted by claimants without the assistance of counsel.").  It is sufficient that the DFEH be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts.  Id. at 267.

### i.    Denial of Family/Medical Leave

Plaintiff's first cause of action is for denial of family/medical leave and wrongful termination in violation of California Government Code § 12945.2.  [Compl. ¶¶ 28-35.]  Plaintiff alleges that her employer improperly counted 191 hours of prior leave against her medical leave and refused to grant her further medical leave to which she was entitled.  [Id. ¶¶ 20-21.]  In addition, Plaintiff alleges that the decision to terminate her was motivated by her use of medical leave.  [Id. ¶ 25.]

Section 12945.2(a) creates a general prohibition "for any employer . . . to refuse to grant a request by any employee with more than 12 months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12-month period, to take up to a total of 12 workweeks in any 12-month period for family care and medical leave." CAL. GOV'T CODE § 12945.2(a).  Section 12945.2(l) also makes it unlawful "for an employer . . . to discharge, fine, suspend, expel, or discriminate against, any individual because of . . . (1) [a]n individual's exercise of the right to family care and medical leave provided by subdivision (a)." Id. § 12945.2(l).

PEG argues that Plaintiff's June 30, 2010 DFEH charge does not identify "denial of

1   family/medical leave" as one of the types of discrimination being claimed, even though the DFEH

2   form has a box for identifying this type of discrimination.  [Def.'s Mot. at 6-7.]  PEG further

3   argues that this situation is similar to the case Okoli v. Lockheed Technical Operations Co., where

4   the California Court of Appeal found that the plaintiff had not exhausted his retaliation claim when

5   the DFEH charge only contained a claim for racial discrimination.  [Id. at 5.]

6        Although Plaintiff did not check the box for "denial of family/medical leave" on the June

7   30, 2010 DFEH charge, the charge alleges that Plaintiff "was out on approved CFRA/FMLA[6]

8   leave from February 18, 2010 to April 12, 2010."  [Doc. No. 18-1, Ex. C.]  The charge further

9   alleges that Plaintiff requested an extension of her leave to June 15, 2010, but she was terminated

10  on April 12, 2010.  [Id.]  These allegation apprise the DFEH of the alleged discriminatory acts in

11  general terms: that she requested an extension of her family/medical leave and her employer

12  denied the extension and terminated her.  In addition, this is different from the Okoli case where

13  the plaintiff added allegations in support of an unlawful retaliation claim that occurred after the

14  filing of the DFEH charge.  See Okoli, 36 Cal. App. 4th at 1617.  Here, the alleged improper

15  conduct is all related to the same events in April 2010 prior to the filing of the June 30, 2010

16  charge.  See Baker v. Children's Hosp. Medical Ctr., 209 Cal. App. 3d 1057, 1065 (finding

17  administrative exhaustion requirement satisfied where "allegations of harassment and differential

18  treatment," although not specifically mentioned in the charge, "encompass[ed] the allegations of

19  discrimination in [the] DFEH complaint").  Therefore, Plaintiff's claim for denial of

20  family/medical leave is within the scope of the investigation that might reasonably have been

21  expected to grow out of the June 30, 2010 charge.

22       Indeed, PEG's August 24, 2010 response to the charge shows that the allegations related to

23  her claim for denial of family/medical leave were addressed during the DFEH's investigation of

24  the charge.[7]  In the response, PEG stated that Plaintiff was terminated on April 12, 2010 due to her

25

26       [6] This stands for California Family Rights Act/Family and Medical Leave Act.

27       [7] In Wills v. Superior Court, the California Court of Appeal expressly declined to decide
    whether a plaintiff may exhaust its administrative remedies when information an employer provides
28  to the DFEH suggests a potential claim.  195 Cal. App. 4th 143, 153-57 (2011).  In that case, the court
    warned that "a rule permitting an employee to satisfy the exhaustion requirement based on information
    the employer voluntarily provided on an uncharged claim may discourage employers from providing

1   failure to return after the expiration of her approved leave.  [Doc. No. 22-16, Ex. 16 at 2.]  The

2   response also stated that PEG granted Plaintiff 12 workweeks of leave to care for her critically ill

3   sister and for her own overlapping medical needs.  [Id.]  The response further states that Plaintiff

4   requested an extension of her leave and that PEG was unable to grant the request and informed

5   Plaintiff that she must return to work or be terminated.  [Id. at 2-3.]  Because the allegations

6   related to Plaintiff's claim for denial of family/medical leave were within the scope of the DFEH

7   investigation that was conducted and what would have been uncovered by a reasonable

8   investigation, Plaintiff exhausted her administrative remedies with respect to this cause of action.

9   See Nazir, 178 Cal. App. 4th at 266-69.

10      Although the Court concludes that Plaintiff exhausted her claim for denial of

11   family/medical leave through her June 30, 2010 charge, Plaintiff has also presented evidence

12   showing that she attempted to file an amended charge on January 27, 2011 that listed "use of

13   CFRA/FMLA leave" as a basis for her claims.  [Doc. No. 22-26, Ex. 26; Doc. No. 22-27, Cosner

14   Decl. ¶ 2.]  PEG argues that Plaintiff could not have exhausted her administrative remedies

15   through this document because there is no evidence that the DFEH or PEG ever received it.  [Doc.

16   No. 17-1 at 8; Doc. No. 29 at 8.]

17      California Government Code § 12960(b) mandates that a plaintiff file a verified charge in

18   writing with the DFEH.  Cole, 47 Cal. App. 4th at 1515.  A charge is considered filed with the

19   DFEH when "it is date-stamped 'received' by the department."  2 C.C.R. § 10001(n).  Because the

20   January 27, 2011 charge does not have a date-stamp on it, [see Doc. No. 22-26, Ex. 26], it does not

---

a comprehensive response to DFEH's investigation, thereby undermining DFEH's ability to investigate unlawful employment practices."  Id.

Although the Wills court declined to address the issue, the Court concludes that it is proper to consider PEG's response in determining whether Plaintiff exhausted her administrative remedies. In Nazir, the California Court of Appeal stated that the "administrative exhaustion requirement is satisfied if the allegations of the civil action are *within the scope of . . . any [DFEH] investigation actually completed.*"  178 Cal. App. 4th at 266 (emphasis in original).  The response is part of the DFEH investigation.  In addition, the court in Wills appeared to be cautious about relying on statements in the employer's response because in that case, the court noted that the DFEH charge did not mention disability discrimination at all and it was only mentioned in the employer's response to the DFEH.  See Wills, 195 Cal. App. 4th at 153-54.  Here, in addition to PEG's response, the DFEH charge itself contains allegations stating that Plaintiff was on medical/family leave, requested an extension of her leave, and was terminated shortly thereafter.

1   appear to have been filed with the DFEH as required by section 12960(b).  However, Plaintiff has

2   presented evidence showing that her counsel in this matter did mail this amended charge to the

3   DFEH on January 27, 2011.  [Doc. No. 22-26, Ex. 26; Doc. No. 22-27, Ex. 27, <u>Cosner Decl.</u> ¶ 2.]

4   In a reasonable investigation, Plaintiff would expect the DFEH to file a charge that she sent to it.

5   Therefore, a reasonable investigation of the January 27, 2011 charge would have uncovered

6   Plaintiff's claim for denial of family/medical leave, and Plaintiff exhausted her claim through the

7   January 27, 2011 charge as well as the June 30, 2011 charge.  Accordingly, the Court **DENIES**

8   PEG's motion for summary judgment of Plaintiff's first cause of action for failure to exhaust her

9   administrative remedies for that specific claim.

ii.     <u>Failure to Engage in the Interactive Process</u>

11      Plaintiff's fifth cause of action is for failure to engage in the interactive process in violation

12   of California Government Code § 12940(n).  [<u>Compl.</u> ¶¶ 63-71.]  Plaintiff alleges that on April 9,

13   2010, she requested an accommodation from Mr. Tilghman of being able to work part-time for a

14   temporary period.  [<u>Id.</u> ¶¶ 21, 65.]  Plaintiff alleges that Mr. Tilghman failed to participate in a

15   timely good-faith interactive process with her and summarily rejected her suggested

16   accommodation.  [<u>Id.</u> ¶¶ 21, 67.]

17      Section 12940(n) provides that it is unlawful "[f]or an employer . . . to fail to engage in a

18   timely, good faith, interactive process with the employee or applicant to determine effective

19   reasonable accommodations, if any, in response to a request for reasonable accommodation by an

20   employee or applicant with a known physical or mental disability or known medical condition."

21   CAL. GOV'T CODE § 12940(n).  "The 'interactive process' required by the FEHA is an informal

22   process with the employee or the employee's representative, to attempt to identify a reasonable

23   accommodation that will enable the employee to perform the job effectively."  <u>Wilson v. Cnty. of</u>

24   <u>Orange</u>, 169 Cal. App. 4th 1185, 1195 (2009).  When engaging in the interactive process, "[b]oth

25   employer and employee have the obligation 'to keep communications open' and neither has 'a

26   right to obstruct the process.'"  <u>Scotch v. Art Institute of Cal.</u>, 173 Cal. App. 4th 986, 1013 (2009).

27      PEG argues that Plaintiff's June 30, 2010 charge does not contain any claim for failure to

28   engage in the interactive process.  [Doc. No. 17-1 at 7-8.]  Although the June 30, 2010 charge does

not specifically use the phrase "failure to engage in the interactive process," the charge alleges that Plaintiff "was denied a reasonable accommodation and terminated" on April 9, 2010.  [Doc. No. 18-1, Ex. C.]  The charge further alleges that Plaintiff requested to return to work part-time, but this request was refused by Mr. Tilghman and Plaintiff was terminated because her employer did not want to reasonably accommodate her.  [Id.]  These allegations apprise the DFEH of the alleged discriminatory acts: that she requested an accommodation and her employer denied the request and terminated her.  In addition, PEG's August 24, 2010 response to the charge addressed these allegations and stated that Plaintiff was not a qualified individual with a known disability, so "the mutual obligation to explore accommodations never arose."[8]  [Doc. No. 22-16, Ex. 16 at 5.] Therefore, the allegations related to Plaintiff's claim for failure to engage in the interactive process were within the scope of the DFEH investigation that was conducted and what would have been uncovered by a reasonable investigation, and Plaintiff exhausted her administrative remedies with respect to this cause of action in the June 30, 2010 charge.  See Nazir, 178 Cal. App. 4th at 266-69; see also Baker, 209 Cal. App. 3d at 1065.

In addition to the June 30, 2010 charge, the January 27, 2011 charge that Plaintiff attempted to file with the DFEH lists as a claim "failure to engage in the interactive process." [Doc. No. 22-26, Ex. 26.]  Although it appears that this charge was never filed, in a reasonable investigation, Plaintiff would expect the DFEH to file a charge that she sent to it.  See supra section II.B.i.  Therefore, a reasonable investigation of the January 27, 2011 charge would have uncovered Plaintiff's claim for failure to engage in the interactive process, and  Plaintiff exhausted her claim through the January 27, 2011 charge as well as the June 30, 2011 charge.  Accordingly, the Court **DENIES** PEG's motion for summary judgment of Plaintiff's fifth cause of action for failure to exhaust her administrative remedies for that specific claim.

///

---

[8] It is also proper to consider PEG's response in determining whether Plaintiff exhausted her administrative remedies with respect to her claim for failure to engage in the interactive process.  The response is part of the investigation that was actually conducted, and in addition to PEG's response, the DFEH charge itself contains allegations stating that Plaintiff requested a reasonable accommodation of part-time work, which her employer refused, and she was terminated shortly thereafter.  See supra note 4.

**C.      Intentional Infliction of Emotional Distress**

PEG argues that it is entitled to summary judgment of Plaintiff's claim for intentional infliction of emotional distress because she has failed to show that PEG engaged in any extreme and outrageous conduct, a required element of her claim.  [Def.'s Mot. at 8-10.]  Plaintiff argues that PEG engaged in "outrageous conduct" when it discriminated against her on the basis of her mental disability, failed to accommodate her, failed to engage in the interactive process with her and wrongfully terminated her.  [Pl.'s Opp'n at 12.]

The elements of a cause of action for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress.  Cole v. Fair Oaks Fire Protection Dist., 43 Cal. 3d 148, 155 n.7 (1970).  For conduct to be extreme and outrageous it must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593 (1979).  "Liability 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  Molko v. Holy Spirit Assn., 46 Cal. 3d 1092, 1122 (1988).

California courts have explained "that employment discrimination . . . can cause emotional distress and that such distress is compensable under traditional theories of tort law."  See Murillo v. Rite Stuff Foods, Inc., 65 Cal. App. 4th 833, 848 (1998).  Generally, courts have found an employer's conduct to be outrageous when the employer "(1) abuses a relation or position which gives him power to damage the [employee's] interest; (2) knows the [employee] is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress."  Cole, 43 Cal. 3d at 155 n.7.

"Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous."  Berkley v. Dowds, 152 Cal. App. 4th 518, 534 (2007).  There is no bright line standard for judging outrageous conduct, and a case-by-case appraisal of conduct is required.  Cochran v. Cochran, 65 Cal. App. 4th 488, 494

(1998).

In opposing summary judgment, Plaintiff has only put forth a one-page declaration stating: "Defendants' outrageous conduct caused me to suffer substantial emotional distress including but not limited to, anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation." [Doc. No. 22-28, <u>Declaration of Chrysti Corkill</u> ("<u>Corkill Decl.</u>") ¶ 2.] This evidence is insufficient to withstand a motion for summary judgment. The declaration only contains a conclusory statement that she was injured due to "Defendants' outrageous conduct." [<u>Id.</u>] The declaration does not state any facts showing that PEG engaged in outrageous conduct. A declaration is too conclusory to be cognizable when it "state[s] only conclusions, and not 'such facts as would be admissible in evidence.'" <u>United States v. Shumway</u>, 199 F.3d 1093, 1104 (9th Cir. 1999).

The only facts that Plaintiff points to in support of her claim that PEG engaged in outrageous conduct are the allegations in her complaint and her notice of termination. [<u>See</u> Doc. No 20, <u>Plaintiff's Statement of Material Facts and Evidentiary References</u> at 46-48.] Plaintiff may not rely on the pleadings in her complaint to create a genuine issue of material fact on a motion for summary judgment. <u>See</u> FED. R. CIV. P. 56(c); <u>Celotex</u>, 477 U.S. at 324. In addition, the notice of termination at most shows a personnel management decision by PEG to terminate Plaintiff's employment after she failed to return to work on April 12, 2010. Personnel management activity by itself is "insufficient to support a claim of intentional infliction of emotional distress, even if an improper motivation is alleged." <u>Janken v. GM Hughes Electronics</u>, 46 Cal. App. 4th 55, 80 (1996); <u>accord.</u> <u>Helgeson v. Am. Int'l Group, Inc.</u>, 44 F. Supp. 2d 1091, 1095-97 (S.D. Cal. 1999).

At the hearing, Plaintiff argued that where a plaintiff has proven a violation of the FEHA, then there is necessarily intentional infliction of emotional distress. Plaintiff is incorrect. Although California courts have stated that employment discrimination may cause intentional infliction of emotional distress, <u>Murillo</u>, 65 Cal. App. 4th at 848, California courts have also stated that personnel management activity even when an improper motivation is alleged is insufficient by itself to support a claim for intentional infliction of emotional distress. <u>Janken</u>, 46 Cal. App. 4th at 80. Therefore, a claim of discrimination under the FEHA is not sufficient by itself to sustain a claim for intentional infliction of emotional distress. <u>See, e.g.</u>, <u>id.</u> (affirming demurrer of claim

1   for intentional infliction of emotional distress where plaintiff had properly alleged a claim for age

2   discrimination).  To withstand a motion for summary judgment, Plaintiff was required to present

3   evidence showing that PEG engaged in outrageous conduct.  Plaintiff failed to do so, and

4   therefore, summary judgment is appropriate.  See Yurick, 209 Cal. App. 3d at 1129-30; Schneider

5   v. TRW, Inc., 938 F.2d 986, 992-93 (9th Cir. 1991).  Accordingly, the Court **GRANTS** PEG's

6   motion for summary judgment of Plaintiff's claim for intentional infliction of emotional distress.

7                                            **CONCLUSION**

8           For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART**

9   PEG's motion for summary judgment.  Specifically, the Court **DENIES** PEG's motion for

10   summary judgment of Plaintiff's first five causes of action for failure to exhaust her administrative

11   remedies, and the Court **GRANTS** PEG's motion for summary judgment of Plaintiff's claim for

12   intentional infliction of emotional distress.

13           **IT IS SO ORDERED.**

14   **DATED:**  November 28, 2011

15                                            **IRMA E. GONZALEZ, Chief Judge**
                                              **United States District Court**

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv505